**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | |
|---|---|
| JACQUELYN M. HUGHES,<br><br>Plaintiff,<br><br>vs.<br><br>MID-CENTURY INSURANCE COMPANY,<br><br>Defendant. | CV 25-27-BLG-WWM<br><br>ORDER GRANTING MOTION TO DISMISS |

Before the Court is Defendant Mid-Century Insurance Company's ("Mid-Century") Motion to Dismiss (Doc. 10), filed under Federal Rule of Civil Procedure 12(b)(6). Plaintiff Jacquelyn M. Hughes ("Ms. Hughes") filed a response on November 28, 2025. (Doc. 18). Mid-Century replied on December 11th. (Doc. 19).

For the following reasons, the Court grants Mid-Century's Motion to Dismiss as to all counts.

## I. Factual Background

On April 23, 2014, Ms. Hughes was traveling through North Dakota with her then-husband, Eric Anderson ("Mr. Anderson"). (Doc. 8 at 1-2). Mr. Anderson was driving the family vehicle when he swerved to avoid a deer, causing

the vehicle to roll. *Id.* at 2. At the time of the accident, the vehicle was covered by an insurance policy issued by Mid-Century. (Doc. 11 at 3). Ms. Hughes paid the policy premiums on the vehicle. (Doc. 8 at 2).

In the years following the accident, Ms. Hughes began to experience problems with her health, including chronic urticaria, severe pain, cognitive impairments, and exhaustion. (Docs. 8 at 2; 18-4 at 2). Ms. Hughes consulted several medical providers, but asserts that none were able to confirm a link between the car accident and her symptoms.[1] (Doc. 18-4 at 2). In September of 2019, Ms. Hughes was diagnosed with fibromyalgia by a provider at Mayo Clinic in Rochester, Minnesota. (Docs. 8 at 2; 18-4 at 2). At the time, her diagnosing provider indicated that trauma, such as a car accident, could have caused fibromyalgia. (Doc. 8 at 2).

In 2020, Ms. Hughes and Mr. Anderson divorced. *Id.* at 9. Pursuant to their divorce agreement, Ms. Hughes and Mr. Anderson "agreed [Ms.] Hughes would get the claim for the April 23, 2014 accident and [Mr.] Anderson agreed she could have until April 2[3],[2] 2020 to file." *Id.* Ms. Hughes filed suit in Montana's

[1] In *Hughes v. Anderson*, the Montana Supreme Court determined that "[Ms.] Hughes's doctor at the Billings Clinic told her by November 2014 that there was a causal link between her symptoms and the accident." 561 P.3d 994 (Mont. 2024) (Table).

[2] Ms. Hughes reports different dates for this deadline throughout her filings. In paragraph 52 of her Complaint, Ms. Hughes states the deadline was April 20. Additionally, in the "Assignment of Rights" document executed by Mr. Anderson, attached to Ms. Hughes's reply (Doc. 18-2), he asserts that he agreed "she could have until April 20." However, in paragraphs

Thirteenth Judicial District Court, Yellowstone County, against Mr. Anderson on April 23, 2020, for negligence per se, alleging that Mr. Anderson is liable for damages resulting from the car accident. *Id.* at 2. Rather than serving the complaint, Ms. Hughes sent a settlement demand letter to Mid-Century on February 3, 2021. *Id.* at 3. Mid-Century retained Calvin J. Stacey ("Mr. Stacey") from the law firm of Stacey & Funyak to conduct an investigation and defend the claim. (*Id.*; Doc. 11 at 2).

On August 17, 2021, Mr. Stacey sent Ms. Hughes a letter stating that Mid-Century was denying liability. (Doc. 18-4 at 5). Nine days later, Mr. Stacey sent Ms. Hughes another letter denying her policy limit demand and asserting that he could find no evidence linking her medical conditions to the car accident. *Id.* at 5-6. Ms. Hughes insists that Mr. Stacey "never collected a single medical record before denying a policy limits demand," was "pretending to investigate the claim," and "had not conducted any investigation, let alone a reasonable investigation," into Ms. Hughes's claim. (Doc. 8 at 2-3).

When Ms. Hughes eventually served the complaint, Mid-Century retained Mr. Stacey and Morgan Sorena ("Ms. Sorena") to defend Mr. Anderson in the

10, 25, 56, and 61 of Ms. Hughes's Complaint, she asserts that the deadline was April 23. The Court notes that the accident occurred on April 23, 2014, and Ms. Hughes and Mr. Anderson initially believed North Dakota's six-year statute of limitations would apply. (Doc. 18 at 8). Six years from the date of the accident is April 23, 2020.

lawsuit. *Id.* at 3. Ms. Hughes reached out to Mid-Century and requested it to "find counsel that was capable of acting in [Mr.] Anderson's best interest," due to her belief that Mr. Stacey had become "focused on discrediting and destroying [Ms. Hughes] to mitigate the damage he had done to Mid-Century." *Id.*

On behalf of Mr. Anderson, Mr. Stacey moved for summary judgment, arguing that the suit was barred by Montana's statute of limitations. (Doc. 11 at 2). Mr. Anderson did not authorize his attorneys to pursue the statute of limitations defense and advised his attorneys that he and Ms. Hughes agreed that Ms. Hughes could have until April 23, 2020, to file the complaint. (Doc. 8 at 4). Nonetheless, Mr. Anderson's attorneys submitted numerous court filings "without authorization of [Mr.] Anderson, and containing statements which [Mr.] Anderson advised his attorneys were false." *Id.*

On February 26, 2024, the state district court granted summary judgment in favor of Mr. Anderson. (Doc. 11 at 2). It held: (1) because all of Ms. Hughes's treatment providers accepted that her injury and symptoms were the product of the accident, the nature of Ms. Hughes injuries was not self-concealing; and, (2) Mr. Anderson was not equitably estopped from raising a statute of limitations defense because "[a]t best, he agreed to a legal conclusion that he believed to be correct," that North Dakota's statute of limitations would apply. *See Hughes,* 561 P.3d at 994 (summarizing the district court's opinion).

Ms. Hughes appealed to the Montana Supreme Court. *Id.* Prior to the oral argument before the court, Ms. Hughes filed a complaint against Mid-Century in state court. (Doc. 18 at 12). Ms. Hughes believed that Mr. Stacey and Ms. Sorena "were about to lie to the Supreme Court about [Mr.] Anderson's position," and so she filed the suit "[i]n an effort to ensure Mid-Century didn't have plausible deniability regarding [Ms.] Sorena's conduct." *Id.* The complaint brought forth four counts: (1) declaratory judgment against Mid-Century; (2) first party bad faith; (3) common law bad faith -- third party; and (4) fraud. (Doc. 18-4). Ms. Hughes dismissed the complaint soon after it was served, believing that "the purpose was accomplished." (Doc. 18 at 12). She maintains that she never intended to pursue the claim. *Id.* On December 31, 2024, the Montana Supreme Court affirmed the district court's order granting summary judgment against Ms. Hughes. *Hughes,* 561 P.3d at 994-95.

On February 28, 2025, Ms. Hughes filed a Complaint against Mid-Century in this Court. (Doc. 1). Ms. Hughes amended her Complaint on October 8, 2025. (Doc. 8). Alleging many of the same facts included in her May 20, 2024, state court complaint, Ms. Hughes claims Mid-Century is liable for fraud, first party bad

faith, and breach of contract. *Id.* She also alleges causes of action for first party bad faith and breach of contract on behalf of herself and Mr. Anderson.[3] *Id.*

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Court engages in a two-step inquiry when evaluating a motion to dismiss. First, the Court accepts as true the facts that are properly pleaded in a complaint, *Autotel v. Nev. Bell Tel. Co.*, 697 F.3d 846, 850 (9th Cir. 2012), as well as reasonable inferences to be drawn from them, *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). The Court will construe the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1032 (9th Cir. 2005). However, the Court need not accept as true any unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Likewise, the Court does not "accept as true

[3] In the First Amended Complaint, Ms. Hughes labels her breach of contract claim, Mr. Anderson's first-party bad faith claim, and Mr. Anderson's breach of contract claim all as Count III. (Doc. 8 at 9-11). In order to avoid confusion, the Court will refer to Ms. Hughes's breach of contract claim as Count III, Mr. Anderson's first-party bad faith claim as Count IV, and Mr. Anderson's breach of contract claim as Count V.

allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Second, the Court determines whether the well-pleaded factual allegations are sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The Court is required to "draw on its judicial experience and common sense" to determine whether a complaint states a plausible claim for relief. *Id.* at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

## III. Discussion

Mid-Century argues that Ms. Hughes's First Amended Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because it "fails to allege actual facts, which under actual Montana law, would state any claim for relief against Mid-Century." (Doc. 11 at 18). Mid-Century's primary argument is that Ms. Hughes incorrectly concluded that Mr. Anderson could enter into an

agreement to waive Mid-Century's rights under the law to seek dismissal based upon the statute of limitations. *Id.* at 6. It asserts that Ms. Hughes's Complaint "should be dismissed on this ground alone." *Id.* at 7. In the alternative, Mid-Century maintains that each individual claim is legally insufficient. *Id.*

Because Ms. Hughes's claims against Mid-Century do not rely solely on the assertion that Mid-Century was obligated to honor the agreement between Ms. Hughes and Mr. Anderson regarding the statute of limitations, the Court declines to resolve the motion on this ground alone. Rather, the Court will evaluate each one of Ms. Hughes's claims separately to determine whether she pleaded sufficient facts to state a plausible claim for relief.

**A. Fraud**

A claim for fraud must be pleaded "with particularity." Fed. R. Civ. P. 9(b). Federal courts look to state law to determine whether the elements of fraud have been pled sufficiently. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). In Montana, a plaintiff alleging fraud must show:

(1) a representation;

(2) falsity of the representation;

(3) materiality of the representation;

(4) speaker's knowledge of the falsity of the representation or ignorance of its truth;

(5) speaker's intent that it be relied upon;

(6) the hearer's ignorance of the falsity of the representation;

(7) the hearer's reliance on the representation;

(8) the hearer's right to rely on the representation; and,

(9) the hearer's consequent and proximate injury caused by the reliance on the representation.

*McCulley v. U.S. Bank of Mont.*, 347 P.3d 247, 256 (Mont. 2015).

Ms. Hughes alleges in her First Amended Complaint that Mid-Century is liable for fraud for its misrepresentations to the state courts that (1) Mr. Anderson wanted Ms. Hughes's claims dismissed; (2) Ms. Hughes lied to the court about her agreement with Mr. Anderson that she would not file suit until after she was diagnosed with a medical condition; (3) Ms. Hughes lied about Mr. Anderson agreeing to allow her until 2020 to file suit; (4) Ms. Hughes's medical providers always knew what was wrong with her and what was causing it; (5) fibromyalgia was not a diagnosis, but rather a summary of complaints; and (6) Ms. Hughes would not be able to find a medical provider who could support causation. (Doc. 8 at 5-6). She alleges that all six representations were false and material, which Mr. Stacey and Ms. Sorena knew. *Id.* at 6. Ms. Hughes also asserts that they intended for the state courts to rely on their statements, and that the courts did rely on their statements. *Id.* The damages alleged are the result of this misrepresentation, according to Ms. Hughes. *Id.* at 6-7.

Mid-Century argues that Ms. Hughes's fraud claim fails for the following reasons. First, Mid-Century argues it is not vicariously liable for the alleged conduct of defense counsel. In addition, Mid-Century points out that Ms. Hughes is alleging Mr. Stacey and Ms. Sorena committed fraud on the courts, rather than on her. Finally, Mid-Century contends that this claim is barred by issue preclusion because she was already heard by the state district court and Montana Supreme Court on her allegations that Mr. Stacey and Ms. Sorena were making misrepresentations.

**1. Vicarious Liability of Defense Counsel**

First, Mid-Century argues that it cannot be held vicariously liable under Montana law for the alleged fraud of defense counsel. (Doc. 11 at 10). Pointing primarily to the Supreme Court's decision *In re Rules of Professional Conduct and Insurer Imposed Billing Rules and Proc.*, 2 P.3d 806 (Mont. 2000), Mid-Century maintains that attorneys in Montana who are hired by insurers are independent contractors, rather than agents; thus, insurers cannot be held liable for defense counsel's conduct. *Id.* at 10-11.

In response, Ms. Hughes acknowledges that defense attorneys have a duty to act in the best interest of the insured, rather than the insurer, and "so long as the attorneys comply, their conduct isn't attributable to the insurer." (Doc. 18 at 23). However, Ms. Hughes asserts that if an attorney acts at the direction of the insurer

and for the insurer's best interest -- albeit, in violation of the Rules of Professional Conduct -- the attorney is an agent of the insurer, creating liability for the insurer. *Id.* Ms. Hughes maintains that she "can prove [Mr.] Stacey and [Ms.] Sorena were acting for the interests of Mid-Century rather than [Mr.] Anderson, so their conduct can be attributed to Mid-Century." (Doc. 18 at 23). Indeed, in her First Amended Complaint, Ms. Hughes states that Mr. Stacey and Ms. Sorena acted at the direction of Mid-Century and in its best interest. (Doc. 8 at 4). She takes it a step further by asserting they "acted as agents of Mid-Century." (Doc. 8 at 4-5).

Vicarious liability arises "where an agency relationship exists." *Stricker v. Blaine Cnty.*, 453 P.3d 897, 902 (Mont. 2019) (internal citations omitted); *see* Mont. Code Ann. § 28-10-602 (2025) ("a principal is responsible to third persons for the negligence of the principal's agent in the transaction of the business of the agency, including wrongful acts committed by the agent in and as a part of the transaction of business"). "An agency relationship requires both consent and control." *Stricker*, 453 P.3d at 902 (internal citations omitted).

Conversely, an employer is generally not liable for the tortious acts of its independent contractors. *Id.* at 901. Thus, liability hinges on whether the employee is an agent or an independent contractor. "The law itself makes no presumption of agency, and the burden of proving agency, including not only the

fact of its existence but also its nature and extent, rests ordinarily upon the party who alleges it." *Elkins v. Husky Oil Co.*, 455 P.2d 329, 332 (Mont. 1969).

The Montana Supreme Court's decision, *In re Rules of Pro. Conduct,* 2 P.3d 806, supports the assertion that defense lawyers who are hired by insurers should function as independent contractors, rather than agents. However, it also stands for the proposition that if an insurer has "absolute control" over litigation, then the insurer can be held vicariously liable for counsel's conduct. 2 P.3d at 812. The court addressed the following question: "May an attorney licensed to practice law in Montana, or admitted pro hac vice, agree to abide by an insurer's billing and practice rules which impose conditions limiting or directing the scope and extent of the representation of his or her client, the insured?" *Id.* at 809. The court concluded that "the requirement of prior approval fundamentally interferes with defense counsels' exercise of their *independent* judgment, as required by [Montana Rule of Professional Conduct] 1.8(f)." *Id.* at 815 (emphasis in original). "Further, prior approval creates a substantial appearance of impropriety in its suggestion that it is insurers rather than defense counsel who control the day to day details of a defense." *Id.* In reaching its decision, the court held that "under the Rules of Professional Conduct, the insured is the *sole* client of defense counsel," rather than co-clients with the insurer. *Id.* at 814 (emphasis in original).

Though the Montana Supreme Court's holding was limited to a determination of whether an insurer's requirement of pre-approval violated the Montana Rules of Professional Conduct, its ruling has implications on whether insurers can be vicariously liable for defense counsel's conduct. If a defense lawyer is complying with the Montana Rules of Professional Conduct, the lawyer should always exercise independent judgment, and insurers do not have the right to interfere, or otherwise control defense counsel. Without consent and control, an agency relationship does not exist. *See Stricker*, 453 P.3d at 902.

This conclusion is substantiated by the Montana Supreme Court's assessment of *State Farm Mut. Auto. Ins. Co. v. Traver*, 980 S.W.2d 625 (Tex. 1998), as one that supports its assertion that "Montana is not alone" in its finding that insurers should not interfere with counsels' independent judgment. *In re Rules of Pro. Conduct*, 2 P.3d at 815-16. In *Traver,* the Texas Supreme Court held that "an insurer is not vicariously liable for the malpractice of an independent attorney whom it chooses to defend an insured." *Id.* at 816 (citing *Traver*, 980 S.W.2d at 627 (finding the insurer to not be vicariously liable for the conduct of an independent attorney that it hired and paid to represent an insured, but exercised no further control)). The *Traver* court reasoned that the critical question is "whether the principal has the right to control the agent with respect to the details of that conduct." *Id.* (citing *Traver*, 980 S.W.2d at 627). It concluded that defense

attorneys were independent contractors and "even assuming that the insurer possesses a level of control comparable to that of a client, this does not meet the requisite for vicarious liability." *Id.* (citing *Traver*, 980 S.W.2d at 627).

Ms. Hughes argues that *In re Rules of Pro. Conduct* "does not overrule case law holding the insurer responsible for the acts of insurance defense counsel when they act for the insurer rather than the insured." (Doc. 18 at 23). She cites *Tigart v. Thompson*, 796 P.2d 582 (Mont. 1990), and *Safeco Ins. Co. v. Ellinghouse*, 725 P.2d 217 (Mont. 1986), to support her proposition that an insurer is liable for the conduct of an attorney if the attorney is an agent of the insurer. (Doc. 18 at 23). The Montana Supreme Court affirmed this point by distinguishing -- not overruling -- the holding in *Jessen v. O'Daniel*, 210 F.Supp. 317 (D. Mont. 1962), from the respondents' assertion that insurers are always vicariously liable for the conduct of defense counsel. *In re Rules of Pro. Conduct,* 2 P.3d at 810. In *Jessen*, this Court held that the insurer's contract with the defense lawyer had "the effect of placing absolute and exclusive control over the litigation in the insurance carrier." 210 F.Supp. at 331. Due to the insurer's absolute control, the *Jessen* Court concluded that the insurer was liable for hired counsel's conduct. *Id.* The Montana Supreme Court acknowledged that it has followed *Jessen* "in holding insurers responsible for the conduct of defense counsel . . . in cases where by contract the insurer was

deemed to have assumed absolute control of the litigation." *In re Rules of Pro. Conduct,* 2 P.3d at 812.

While Ms. Hughes was correct that *In re Rules of Pro. Conduct* did not overrule case law holding the insurer responsible for the acts of defense counsel, the standard for imposing liability is more than assessing whose best interest counsel is seeking to benefit: it is whether the insurer has "absolute control" over the litigation. In her First Amended Complaint, Ms. Hughes makes the following allegations in regard to Mid-Century's control over Mr. Stacey and Ms. Sorena's conduct: (1) "In *Hughes v. Anderson*, [Mr.] Stacey and [Ms.] Sorena acted at the direction of Defendant Mid Century rather than [Mr.] Anderson;" (2) "Numerous positions were taken by [Mr.] Stacey and [Ms.] Sorena which were not supported by their client, but were for the sole purpose of benefitting Defendant Mid-Century Insurance;" (3) and "[Mr.] Stacey and [Ms.] Sorena acted as agents of Mid-Century rather than attorneys acting in the best interest of [Mr.] Anderson."

Though the Court accepts as true properly pleaded factual allegations on a motion to dismiss, it need not accept as true any unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. *In re Gilead Scis. Sec. Litig.*, 536 F.3d at 1055. Ms. Hughes has not pleaded sufficient facts to establish that Mid-Century had absolute control over litigation. Rather, she alleges mere conclusory statements and legal

allegations, asking the Court to infer that Mid-Century had control over counsel's conduct simply because counsel invoked the statute of limitations despite Mr. Anderson's agreement with Ms. Hughes. Ms. Hughes has not met her burden of pleading an agency relationship between Mr. Stacey, Ms. Sorena, and Mid-Century. *Elkins*, 455 P.2d at 332. As such, Mid-Century cannot be held vicariously liable for defense counsel's conduct.

Though this issue is dispositive with respect to Count I, the Court nonetheless addresses the remaining arguments raised in Mid-Century's Motion to Dismiss.

**2. The Proper Hearer in Fraud Claims**

Mid-Century next argues that Ms. Hughes's fraud claim fails because "the hearer" of the alleged misrepresentation is the courts, rather than Ms. Hughes. Thus, she is unable to demonstrate the ninth element: "the hearer's consequent and proximate injury caused by the reliance on the representation." Ms. Hughes maintains that "[f]raud does not always require the hearer and the injured party to be the same." (Doc. 18 at 18). In support, Ms. Hughes cites to several Montana Supreme Court cases that describe the ninth element as "consequent and proximate injury caused by reliance on the representation," arguing that the language is intentionally vague as to whom the injury is assigned. *See C. Haydon Ltd. v. Mont. Mining Props., Inc.* 864 P.2d 1253, 1256 (Mont. 1993); *Bartlett v. Allstate Ins. Co.*,

929 P.2d 227, 231-32 (Mont. 1996); *Nentwig v. United Indus.*, 845 P.2d 99, 105 (Mont. 1992).

The Court is unconvinced of Ms. Hughes's assertion that Montana law does not require the hearer and the injured party to be the same person. In each of the cases Ms. Hughes cited, the hearer and the injured party were indeed the same person. In *C. Haydon*, the defendant, Montana Mining Properties, Inc. ("MMPI"), filed a third-party complaint against its general manager and attorney. 864 P.2d at 1255. MMPI alleged that its attorney was liable for fraud for falsely stating MMPI owed money to the president of the company pursuant to a consulting agreement. *Id.* Though the court dismissed MMPI's fraud claim for a lack of sufficient particularity, the alleged hearer and injured party were the same entity. *Id.* at 1256. Likewise, in *Bartlett*, the plaintiff alleged that Allstate Insurance Company was liable for fraud for its alleged misrepresentation that the home he intended to purchase was insured, when in fact the policy was set to become effective on closing. 929 P.2d at 229-32. So too here, the plaintiff alleged that he was the hearer and the injured party. *Id.* Lastly, in *Nentwig*, the plaintiff alleged that United Industries was liable for fraud for its alleged representation that the plaintiff had signed a three-year lease, when in fact United Industries' predecessor had never signed the lease and United Industries was leasing her the space on a month-to-month basis. 845 P.2d at 105. Although in *Nentwig* the original representation

was made by a third party, the hearer and the injured party remain the same: the plaintiff. *Id.*

It is clear that the Montana Supreme Court's decision to omit "the hearer" from the ninth element in some cases does not reflect its intention to allow the injured party to be anyone other than the person or entity the false representation was made to. This point is reinforced by the considerable number of more recent cases that explicitly state the ninth element as "the hearer's consequent and proximate injury." *See, e.g., McCulley*, 347 P.3d at 256; *Grizzly Sec. Armored Express, Inc. v. Bancard Servs., Inc.*, 384 P.3d 68, 78 (Mont. 2016); *Franks v. Kindsfather (In re Est. of Kindsfather)*, 108 P.3d 487, 490 (Mont. 2005); *May v. ERA Landmark Real Est. of Bozeman*, 15 P.3d 1179, 1182 (Mont. 2000).

**a. Montana Legislature's Intent to Hold Insurance Companies Accountable**

Ms. Hughes points to Mont. Code Ann. § 33-18-242(4), a provision in the Unfair Trade Practices Act ("UTPA"), to support her premise that the Montana Legislature "intended to hold insurance companies accountable for fraudulent behavior in the claims handling process, even if the insurer managed to procure dismissal of the claim." (Doc. 18 at 17). Section 33-18-242(4) of the Montana Code functions to limit potential causes of action for third-party claimants against insurance companies for the handling of an insurance claim to fraud or pursuant to the UTPA, "not under any other theory or cause of action." While it is evident that

the Montana Legislature intended to allow third-party claimants to bring forth fraud claims, it does not follow that a third-party might be excused from pleading all the necessary elements. Despite the statutory allowance for such claims, third-party plaintiffs remain bound by the requirement that the hearer suffered damages from their reliance on the defendant's misrepresentation.

**b. Amending the Complaint**

Lastly, Ms. Hughes argues that "if the Court does find the hearer and the person damaged have to be the same," the Court "must" allow her to amend her Complaint a second time so that she can plead facts that allege Mid-Century committed fraud on her and Mr. Anderson, rather than the Courts. (Doc. 18 at 18-19). Federal Rule of Civil Procedure 15(a)(1) allows parties to amend their pleadings "once as a matter of course." Any further amendments may only be made pursuant to the opposing party's written consent or the Court's leave, which should be granted "when justice so requires." Fed. R. Civ. P. 15(a)(3). Local Civil Rule 15.1 requires a party moving for leave to amend or supplement its pleadings to attach the proposed pleading as an exhibit. "Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal." *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2017). "An amendment is futile when no set of facts can be proved under the amendment to the pleadings

that would constitute a valid and sufficient claim or defense." *Mo. ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017).

In her response to Mid-Century's motion to dismiss, Ms. Hughes included the facts that she would plead if she were granted leave to amend. (Doc. 18 at 19-20). Ms. Hughes contends that she can allege facts on behalf of herself and Mr. Anderson that meet the elements of fraud. As for herself, Ms. Hughes alleges that Mid-Century is liable for fraud for Mr. Stacey's representation that Ms. Hughes "needed to develop evidence of causation" and that "Mid-Century intended to enter into negotiations on the claim." *Id.* at 19. She asserts that (1) these representations were false, (2) she relied on the representations, and (3) she was damaged as a result because she rejected the offer to settle for $75,000, and "incurred numerous costs attempting to get Mid-Century the information [Mr.] Stacey claimed it needed." *Id.* As to Mr. Anderson's claim, Ms. Hughes alleges that Mid-Century is liable for fraud due to Mr. Stacey's representation to him that his agreement with Ms. Hughes to allow her to have until 2020 to file the complaint was not binding. *Id.* Ms. Hughes alleges that Mr. Stacey knew this to be false and nonetheless caused Mr. Anderson to act in violation of his divorce agreement, causing him damages. *Id.*

In response to the proposed amendments, Mid-Century argues that it is not vicariously liable for defense counsel's conduct. As the Court previously

concluded, Mid-Century is correct. Mid-Century is not vicariously liable for Mr. Stacey and Ms. Sorena's conduct because Ms. Hughes has not pleaded sufficient facts demonstrating Mid-Century had complete control over counsel. Because Ms. Hughes's proposed amendment would be subject to dismissal, her request for leave to amend is denied.

### 3. Issue Preclusion

Lastly, Mid-Century argues that Ms. Hughes's fraud claim is barred by the doctrine of issue preclusion because she was already heard on the issue by the Montana Supreme Court. (Doc. 11 at 8). Ms. Hughes maintains that (1) the Montana Supreme Court did not reach the issue of Mr. Stacey or Ms. Sorena's misrepresentations, (2) she has not previously pursued bad faith, fraud, or breach of contract against Mid-Century, and (3) she did not have a full and fair opportunity to litigate the issue. (Doc. 18 at 21-22).

Claim preclusion and issue preclusion are two doctrines that "prevent parties from waging piecemeal, collateral attacks on judgments, thereby upholding the judicial policy that favors a definite end to litigation." *Denturist Ass'n of Mont. v. Montana*, 372 P.3d 466, 469 (Mont. 2016) (internal citations omitted). Both doctrines aim to "conserve judicial resources and encourage reliable adjudication by preventing inconsistent judgments." *Id.* Issue preclusion "bars the same parties

or their privies from relitigating issues in a second suit that is based upon a different cause of action." *Id.* The elements of issue preclusion are:

> (1) the identical issue raised was previously decided in a prior adjudication;
>
> (2) a final judgment on the merits was issued in the prior adjudication;
>
> (3) the party against whom collateral estoppel is now asserted was a party or in privity with a party to the prior adjudication; and
>
> (4) the party against whom preclusion is asserted must have been afforded a full and fair opportunity to litigate any issues which may be barred.

*Id.*

Issue preclusion does not bar Ms. Hughes's fraud claim in this Court. Though Ms. Hughes raised her concern that Mr. Stacey and Ms. Sorena were misrepresenting facts to the state district court and Montana Supreme Court in *Hughes v. Anderson*, the ultimate decision turned on the statute of limitations. It cannot be said that the courts decided whether Mr. Stacey and Ms. Sorena made misrepresentations or that it amounted to fraud in the course of that case. Likewise, taking Ms. Hughes's allegations as true, it cannot be said that she had a "full and fair opportunity to litigate" the issue of fraud. The misrepresentations that form the basis of the claim were made during the course of the litigation. She could not have had a "full and fair opportunity" to litigate based on events that were happening in real time.

For the reasons set forth above, the Court dismisses Count I. Mid-Century cannot be held vicariously liable for the alleged fraud as it lacked absolute control over Mr. Stacey and Ms. Sorena's conduct. Additionally, according to Montana law, the hearer and the injured party must be the same in a claim for fraud. Even if Ms. Hughes were to amend her Complaint and assert a fraud claim on behalf of her and Mr. Anderson for the statements Mr. Stacey and Ms. Sorena made to each of them, Mid-Century would still not be vicariously liable. Though issue preclusion does not bar this action, the Court's other findings are dispositive with respect to this cause of action.

**B. First Party Bad Faith**

Ms. Hughes next brings claims against Mid-Century for first party bad faith on behalf of herself and Mr. Anderson. As insured parties, Ms. Hughes and Mr. Anderson "may not bring an action for bad faith in connection with the handling of an insurance claim." Mont. Code Ann. § 33-18-242(3). Because Ms. Hughes cites to provisions of the UTPA to support her claims, the Court will construe her bad faith claims as claims for violations of the UTPA.

"[UTPA] allows a person to seek damages from an insurer engaging in unfair and deceptive practices." *Dannels v. BNSF R.R. Co.*, 483 P.3d 495, 500 (Mont. 2021) (citing Mont. Code Ann. § 33-18-101). The UTPA provides a mechanism for insureds to bring suit against their own insurance company,

sometimes referred to as "first-party" suits, and an individual to bring suit against an insurance company that they are not insured by as a claimant; these individuals are referred to as "third-party claimants." *See Montana ex rel. U.S. Fidelity & Guar. Co. v. Mont. Second Jud. Dist. Ct.*, 783 P.2d 911 (Mont. 1989). An insured or third-party claimant can pursue an independent cause of action against an insurer for actual damages caused by the insurer's violation of Mont. Code Ann. § 33-18-201(1), (4), (5), (6), (9), or (13). Mont. Code Ann. § 33-18-242(1). These subsections prohibit an insurer from engaging in the following unfair claim settlement practices:

> (1) misrepresent[ing] pertinent facts or insurance policy provisions relating to coverages at issue;
> . . .
> (4) refus[ing] to pay claims without conducting a reasonable investigation based upon all available information;
> (5) fail[ing] to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;
> (6) neglect[ing] to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;
> . . .
> (9) attempt[ing] to settle claims on the basis of an application that was altered without notice to or knowledge or consent of the insured; . . .
> . . .
> (13) fail[ing] to promptly settle claims, if liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage
> . . .

Mont. Code Ann. § 33-18-201. The UTPA specifically limits an insured's potential causes of action to breach of contract, fraud, or violations of the above

subsections of Mont. Code Ann. § 33-18-201, "not under any other theory or cause of action," including bad faith. Mont. Code Ann. § 33-18-242(3). An insured may file an action under this section together with any other cause of action, but a third-party claimant "may not file an action under this section until after the underlying claim has been settled or a judgment entered in favor of the claimant on the underlying claim." Mont. Code Ann. § 33-18-242(7).

### 1. Claim of Ms. Hughes

Ms. Hughes's second cause of action alleges that Mid-Century is liable for violating the duties set forth in Mont. Code Ann. § 33-18-201(1), (4), (6), and (7).[4] (Doc. 8 at 7-8). Mid-Century moves to dismiss the claim because it argues that Ms. Hughes was not a first-party insured in the underlying dispute. (Doc. 11 at 12-13). It maintains that although she was a covered driver and paid the premiums, Ms. Hughes did not present any first-party claims to Mid-Century, nor was any third party bringing a claim against her that Mid-Century was required to indemnify. *Id.* at 13. Rather, Mid-Century asserts that Ms. Hughes was a third-party claimant. *Id.* Ms. Hughes counters that because she paid the premiums and is a party to the insurance contract, she is "as a matter of law, a first-party claimant." (Doc. 18 at 26). She further contends that while "[t]his scenario may

[4] Mont. Code Ann. § 33-18-242(1) does not authorize a cause of action based upon Mont. Code Ann. § 33-18-201(7).

be unique," there is no legal authority that holds "that a person cannot be both a first-party and third-party claimant." *Id.* at 25-26.

The Court does not need to reach the issue of whether Ms. Hughes can be both a first-party and third-party claimant under Montana law. Rather, the Court dismisses Count II because Ms. Hughes fails to provide any factual basis for this claim. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Even if the Court were to string together the likely basis for Ms. Hughes's claim from other portions of the First Amended Complaint, her claim still fails. First, Ms. Hughes alleges that Mid-Century "misrepresent[ed] pertinent facts." (Doc. 8 at 8). The only allegations of misrepresentations are attributable to Mr. Stacey and Ms. Sorena. As discussed, Mid-Century is not vicariously liable for Mr. Stacey and Ms. Sorena's conduct. Second, Ms. Hughes alleges Mid-Century "refus[ed] to pay claims without conducting a reasonable investigation based upon all available information." *Id.* Based upon Ms. Hughes's representation that Mr. Stacey offered to settle for $75,000 and stated that Mid-Century would be open to further negotiation if she developed causation evidence, this is an unwarranted deduction of fact. The Court need not accept as true any unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. *In re Gilead Scis. Sec. Litig.*, 536 F.3d at 1055. Third, Ms.

Hughes alleges that Mid-Century "neglect[ed] to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear." (Doc. 8 at 8). This is likewise an unwarranted deduction of fact. Not only did Mid-Century presumptively authorize the $75,000 settlement, but liability was also not reasonably clear, as indicated by Mr. Stacey's request for causation evidence and the ultimate dismissal based upon the statute of limitations. Lastly, Ms. Hughes invokes the language of Mont. Code Ann. § 33-18-201(7), asserting that Mid-Century is liable for "compel[ling] insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds." (Doc. 8 at 8). Not only is this legal theory barred by Mont. Code Ann. § 33-18-242, but Ms. Hughes did not recover anything in the underlying suit. She cannot demonstrate that Mid-Century offered "substantially less" than zero. Count II is dismissed.

**2. Mr. Anderson's Claim**

Count IV of the First Amended Complaint alleges that Mid-Century is liable to Mr. Anderson for bad faith as a first-party claimant. (Doc. 8 at 9). Ms. Hughes asserts that Mid-Century was "advised on numerous occasions that the parties' finances were intertwined" and that its "efforts to completely avoid any payment for [Ms.] Hughes's claims were not in [Mr.] Anderson's best interest." *Id.*

Furthermore, Ms. Hughes asserts that Mr. Stacey and Ms. Sorena's actions placed Mr. Anderson "in violation of the agreements reached in the context of [Ms.] Hughes and [Mr.] Anderson's dissolution." *Id.* at 10. Lastly, Ms. Hughes alleges that Mr. Stacey "sought to avoid communication between [Ms.] Hughes and [Mr.] Anderson regarding this issue by falsely claiming he still represented [Mr.] Anderson." *Id.* at 10-11. Though Mr. Anderson is not a plaintiff in the present suit, Ms. Hughes alleges that he "agreed to assign his rights against Mid-Century to [Ms.] Hughes." *Id.* at 11.

Mid-Century moves to dismiss on three grounds. (Doc. 11 at 14-16). First, Mid-Century maintains that Mr. Anderson's attorneys did not violate any duties owed to him by successfully defending the lawsuit. *Id.* at 15. It disagrees with Ms. Hughes's conclusion that because counsel "did not agree to collude against the insurer, [] counsel automatically became the agent of Mid-Century and that such is insurance bad faith against [Mr.] Anderson." *Id.* Second, the proper venue for Ms. Hughes's accusations was the state court, and she "provides nothing to now suggest that such conduct is attributable to Mid-Century, even if true." *Id.* at 15-16. Lastly, there is no requirement in Mont. Code Ann. § 33-18-201 that an insurer must "allow parties to collude against it to get payment, where none is due, in order to benefit the parties in their divorce proceedings." *Id.* at 16.

Ms. Hughes responded that Mid-Century breached the following duties: (1) honesty, (2) "to provide a defense focused on [Mr.] Anderson's interests," (3) "to give consideration to [Mr.] Anderson's interests in considering settlement," (4) to fully investigate the claim before "launching its insured into litigation" and (5) not to misrepresent material facts. (Doc. 18 at 28).

Mr. Anderson may only pursue claims for Mid-Century's violation of Mont. Code Ann. § 33-18-201(1), (4), (5), (6), (9), or (13). Mont. Code Ann. § 33-18-242(1). The allegations contained in Count IV only concern duties described in subsections (1) and (4); any other claims are barred by Mont. Code Ann. § 33-18-242. As to subsection (1), Ms. Hughes has not alleged facts supporting the claim that Mid-Century misrepresented pertinent facts to Mr. Anderson. As to subsection (4), the Court maintains that Ms. Hughes's allegation that Mid-Century failed to conduct a reasonable investigation is an unwarranted deduction of fact. Thus, the Court dismisses Count IV.

### C. Breach of Contract

#### 1. Ms. Hughes's Claim

Ms. Hughes's third cause of action alleges that Mid-Century is liable for breaching its insurance contract with her, where Mid-Century "agreed to cover claims arising out of the use of [Ms. Hughes's] 2005 Ford Escape." (Doc. 8 at 8). She concludes that Mid-Century "breached its contractual obligations, including

and because the pertinent facts are pled elsewhere in her complaint, the Court will consider Ms. Hughes's claim as clarified in her response. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) ("In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice").

Every contract, regardless of type, contains an implied covenant of good faith and fair dealing; a breach of this covenant is a breach of the contract. *Story v. Bozeman*, 791 P.2d 767, 775 (Mont. 1990). "The conduct required by the implied covenant of good faith and fair dealing is honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." Mont. Code Ann. §28-1-211. A breach of "an express contractual term is not a prerequisite to breach of the implied covenant." *Story*, 791 P.2d at 775.

Ms. Hughes's breach of contract claim fails because Mid-Century is not vicariously liable for defense counsel's conduct, as previously discussed. Absent a showing that Mid-Century had absolute control over Mr. Stacey and Ms. Sorena, their statements regarding Ms. Hughes's truthfulness and Mid-Century's position as to the possibility of re-negotiating a settlement are only attributable to counsel. Ms. Hughes has not pleaded any facts indicating that Mid-Century had any control over these statements. Thus, Ms. Hughes has not met her burden to plausibly

the breach of [sic] the covenant of good faith and fair dealing inherent in every contract." *Id.* at 9. Mid-Century argues that Ms. Hughes's breach of contract claim must be dismissed because (1) the state district court and Montana Supreme Court determined that "as a matter of law, [Ms. Hughes] had no claim based on the statute of limitations," and (2) she "does not identify any specific facts as to how Mid-Century breached the insurance contract when [Ms. Hughes] made a third-party claim." (Doc. 11 at 13-14).

In response, Ms. Hughes clarifies that Mid-Century breached the covenant of good faith and fair dealing in two ways. (Doc. 18 at 26-27). First, she alleges that it was a breach for Mr. Stacey and Ms. Sorena to represent on behalf of Mr. Anderson that Ms. Hughes was "a liar" and made false representations to the court. *Id.* Second, she alleges it was a breach when Mr. Stacey advised Ms. Hughes that the investigation had been completed and offered to settle for $75,000, led her to believe that if she developed causation evidence Mid-Century would further negotiate, and then changed positions twenty months later. *Id.* at 27.

Ms. Hughes's Complaint does not sufficiently explain the factual basis for her breach of contract claim. Generally, a plaintiff cannot cure deficiencies in a complaint through allegations in response to a motion to dismiss. *See Broam v. Bogan*, 320 F.3d 1023, 1027 n.1 (9th Cir. 2003). However, construing the pleadings in the light most favorable to Ms. Hughes, *Manzarek*, 519 F.3d at 1032,

and because the pertinent facts are pled elsewhere in her Complaint, the Court will consider Ms. Hughes's claim as clarified in her response. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) ("In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice").

Every contract, regardless of type, contains an implied covenant of good faith and fair dealing; a breach of this covenant is a breach of the contract. *Story v. Bozeman*, 791 P.2d 767, 775 (Mont. 1990). "The conduct required by the implied covenant of good faith and fair dealing is honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." Mont. Code Ann. § 28-1-211. A breach of "an express contractual term is not a prerequisite to breach of the implied covenant." *Story*, 791 P.2d at 775.

Ms. Hughes's breach of contract claim fails because Mid-Century is not vicariously liable for defense counsel's conduct, as previously discussed. Absent a showing that Mid-Century had absolute control over Mr. Stacey and Ms. Sorena, their statements regarding Ms. Hughes's truthfulness and Mid-Century's position as to the possibility of re-negotiating a settlement are only attributable to counsel. Ms. Hughes has not pleaded any facts indicating that Mid-Century had any control over these statements. Thus, Ms. Hughes has not met her burden to plausibly

demonstrate that she is entitled to relief. *Iqbal*, 556 U.S. at 679. The Court dismisses Count III.

**2. Mr. Anderson's Claim**

Count V of the First Amended Complaint alleges that, due to her purported assignee status, Mid-Century is liable to Ms. Hughes for breach of contract. (Doc. 8 at 11). Ms. Hughes alleges that Mid-Century breached its duty to defend Mr. Anderson when it retained defense counsel that did not act in Mr. Anderson's best interest. *Id.* at 11-12. Mid-Century moves to dismiss Count V, maintaining that it fulfilled its duty to defend Mr. Anderson by hiring counsel that secured complete dismissal of the lawsuit. (Doc. 11 at 17). Mid-Century points out that there is no contract provision that requires Mid-Century to allow Mr. Anderson and Ms. Hughes to "collude against Mid-Century to get Mid-Century to pay [Ms. Hughes] money that both the District Court and Montana Supreme Court have ruled is not owed." *Id.*

The Court agrees with Mid-Century. It cannot be said that Mid-Century breached its duty to defend Mr. Anderson by successfully dismissing the complaint filed against him. Any other conclusion would be contrary to common sense. Likewise, Ms. Hughes has not alleged any provision of the insurance contract that requires Mid-Century to forgo a legal defense when Mr. Anderson makes a separate agreement that he will do so. For those reasons, Count V is dismissed.

## IV. Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Mid-Century's Motion to Dismiss (Doc. 10) is GRANTED as to all counts.

The Clerk of Court is directed to notify the parties of the making of this Order.

DATED this 30th day of September, 2026.

WILLIAM W. MERCER
UNITED STATES DISTRICT JUDGE